Oh, my. Which is 23-1703, Abre Jackson v. Marc Anastacio, Miss Van Hook. Good morning, Your Honors. May it please the court? Good morning. Abigail Van Hook, appearing on behalf of Abre Jackson. Today, we ask this court to reverse the district court's grant of summary judgment and to allow Mr. Jackson's due process claim to go to trial. This case boils down to one issue, and that's whether under the Sandin hardship analysis, there's evidence of a particularly harsh condition in disciplinary segregation at Pontiac when combined with a three-month duration was enough to establish a deprivation of a liberty interest. Under Sandin v. Connor from the Supreme Court in 1995, to prove a deprivation of liberty interest, an incarcerated person, like Mr. Jackson, must establish an atypical and significant hardship in relation to the ordinary incidence of prison life. This court. Forgive me. Did Mr. Jackson provide any further details as to the conditions that he experienced, such as whether he had made any requests for cleaning supplies that were denied, or the extent of the mice and roach infestation, and the impact that that had on his daily life? While Mr. Jackson did not provide details on requesting cleaning supplies, he was explicit in his declaration that what he experienced, which would be the inmates throwing feces, the no regular cleaning, the roaches, the mice, that these were atypical to the general population. And with that in mind, it establishes that regardless of his reaction to those conditions, that the conditions were atypical. Ms. Van Hook, can I push you on one of those points? Of course, Your Honor. So when you look at exactly what Mr. Jackson said in his declaration, going to Judge Rovner's question, when he talks about the West House, and he talks about inmates throwing feces and urine, the way he couches that is he says, inmates threw feces and urine at other inmates while they passed the cells to go to hearings or whatever. Did he ever at any point come forward and say, and it happened to me too? In other words, do you see what I'm pointing at? Do you see what I'm observing? It looks like what he's doing is he's, in his declaration, reporting what he saw happen to others. Now, this is horrible. I'll grant you that. But did he ever say, and this happened to me when I was going to the medical unit or the library or the shower or anything like that? Your Honor, in his declaration with regards to throwing feces and urine at other inmates, he does not explicitly state that it happened to him. But he is experiencing what, he is describing what he experienced in segregation. With respect to the feces and the urine on the walls, those factors do apply to the cell that he was in in segregation. The roaches and the mice, those apply to the showers that he was using in segregation for three months, the contaminated water. This is the state of segregation that he experienced. However, with respect to the specific example of throwing feces and urine, he does not say explicitly that it was directed at him. So what you're doing is you're essentially, and don't let me put words in your mouth, you're essentially reading between the lines. Yes. To say, when he talks about urine and feces being thrown, when he talks about urine and feces on the walls, he implicitly is describing what he too experienced. Yes, Your Honor, and I think it's a little more powerful than just reading in between the lines. This isn't a person that walked through segregation one day and wrote down what they think they saw. This is someone that was sent to segregation for three months and lived there for three months. So everything he's describing is a firsthand experience of what he saw daily and what he lived in daily. Right, and what Judge Roedner's question is getting at is why didn't he write that down in his declaration? What you just said. Your Honor, we... I can't speak to specifically why he didn't write that down in his declaration, but in other cases, the emphasis of this court was on the fact that there wasn't a difference shown between general population and what the individual experienced. However, in Mr. Jackson's declaration, by him stating that unlike general population, that establishes that atypical hardship for everything that he described. And again, it's just the inmates throwing feces and urine at each other. That's the only statement that he wouldn't have clearly experienced since he was in segregation for three months. Yes, and please, I know that you surely must understand, Ms. Van Hook, that we really understand that these conditions are deplorable. They're deplorable. On the other hand, they are the type of complaints that are not atypical of even the general population. What, if any, evidence did Mr. Jackson present to support the claim that the water was contaminated with bacteria that causes Legionnaire's disease? Because, I mean, is that the type of allegation that we can accept at the summary judgment stage without some evidence that would establish the factual basis? Well, Your Honor, I think, or the case has established that even your self-serving testimony, if it's a declaration and if it's proper, it can be relied upon at summary judgment. He's providing his firsthand account of what he experienced in segregation. He didn't have a water tester with him and we weren't able to test the water, but his firsthand experience and account should be enough to survive the summary judgment stage. But that, I mean, that's the kind of allegation that we need some evidence, or else anyone could just say, yeah, well, there's bacteria in this water and it's causing Legionnaire's disease. I mean, we really need a little more than that. Could I ask you about the issue of qualified immunity? Absolutely, Your Honor. By way of background, we've been struggling with these solitary confinement cases for a long time. Yeah. With kind of sliding scales about length and conditions and so on. And that makes the uncertainty in the standard for when due process requirements for solitary confinement assignments are appropriate, gets very tough with a qualified immunity defense. I understand that you've argued that the defense here has shifted grounds entirely on qualified immunity. But if we were to send this back to the district court and the defendants then raise the right qualified immunity defense in theory, what would plaintiff have to say in response? Your Honor, can you clarify on what the right qualified immunity defense? The right qualified immunity question is, would it have been apparent to a reasonable prison official dealing with Mr. Jackson's disciplinary case that the combination of three months in solitary and the conditions that he describes would require the due process protections for a liberty interest? First, Your Honor, we actually believe that the qualified immunity attaches to the due process violation itself, not necessarily the liberty interest analysis. Because an analysis where, a situation where qualified immunity would cover you if this court hasn't ruled on that particular set of facts would just give people leeway to violate rights creatively. Well, qualified immunity doctrine allows that. That doesn't defeat the defense. In the Seventh Circuit, in the case Lyle versus Wellborn from 2019, this court said, to proceed on a due process claim, you must demonstrate the deprivation of a liberty interest and a constitutionally deficient procedure. It was our understanding that qualified immunity applies to the constitutionally deficient procedure. Well, but it also depends, it doesn't even, you don't even get to that if what's proposed is not a deprivation of liberty, right? In theory, yes. Suppose it's one week in solitary, okay? I don't think anybody thinks under current law that's enough to require due process procedures. Actually, Your Honor, I think it is the other way around because the reason why it is a deprivation of liberty isn't because it's solitary confinement or isn't because it's a punishment. It's because you only experience that punishment because of a violation in your due process hearing. Mr. Jackson's hearing was at fault. If he had had due process during that hearing, there's no way to say that he actually would have had the three months in segregation. So the liberty interest itself has to come after the due process analysis. I'm not following. No. Let me try it this way. I will wanna ask the defense counsel about the reversal of the lost good time. But let's assume there's no loss of good time. There's simply a disciplinary hearing that imposes one week in solitary for whatever infraction occurred. If I'm a member of that committee trying to decide what the appropriate punishment is and therefore what procedures might be needed, how would I know whether the adversarial procedures of Wolf against McDonald, or well, the limited procedures of Wolf against McDonald are required? Your Honor, what we're arguing here is that you don't have to think about how am I gonna be covered if I violate this person's rights if you sit and say, what are the rights that this person has and let me have and conduct a hearing that maintains those rights? So- That would be an admirable way to think about it. I would think about this, but- Thank you, Your Honor. But if I'm, but I'm thinking, look, I've got a prisoner in front of me who wants to bring in 10 witnesses and wants us to see all the video and all we wanna do is impose relatively modest sanction of a week in solitary. I don't need to give him any of those rights under Supreme Court Seventh Circuit precedent, right? Which goes to the qualified immunity standard. Qualified immunity attaches when there is only a, pardon me, qualified immunity will only become an issue if you violate a clearly established right. In your example for the established Seventh Circuit procedure, you don't have to allow all of those. If say you didn't have to allow those witnesses, then you're fine. Qualified immunity attaches to you. However, in this situation, there was clearly established rights, as we saw in Ellison, that he should be allowed to present that video evidence and he wasn't. So at the very first point of analysis is the due process violation. And once you have that violation, then qualified immunity does not attach. The liberty interest goes to whether or not our client has actually a valid claim for that due process violation. And I've gone well past my time. So hopefully I'll be able to still reserve some for rebuttal. I will, of course, allow you to do that. Thank you. Thank you. All right. Mr. Reshteyn. Mr. Reshteyn. Hello. Good morning, your honors, or maybe good afternoon now, your honors. May it please the court. I am Assistant Attorney General Tim Reshteyn, and I represent the defendants of Pelleas. This court should affirm the grant of summary judgment for defendants on Jackson's due process claim. Indeed, the court can do so based on several grounds. Specifically, Jackson failed to establish that he had a protected liberty interest, that the process he received was deficient, that the defendants were not entitled to qualified immunity, and that defendant Leonta Jackson was personally liable for any alleged deprivation of due process. Turning to the first issue and what the court was looking to at the start of the argument, Jackson has not provided any evidence to show that the conditions in his cell arose to exceptionally and unusually harsh conditions or deviated substantially from the ordinary incidents of prison life. No reasonable jury could find that. His conditions claim, the subtotal of it, is all in a few short sentences that provide no description of his particular cell. Could you compare his description of conditions in solitary confinement to the Supreme Court's description in Taylor v. Riojas, in which it summarily reversed a grant of qualified immunity? I'm not familiar with that case, Your Honor. I'd be happy to provide supplemental briefing on it. It was a 2020 decision, 592 U.S. 7. And it just took a couple of paragraphs. Shockingly unsanitary cells. First cell covered nearly floor to ceiling in massive amounts of feces all over the floor, the ceiling, the windows, the walls, and even packed inside the water faucet. A clogged drain. No drainage, no heating. It wasn't very detailed, but it was sufficient for the Supreme Court to tell us that's enough to summarily reverse a grant of qualified immunity. Nothing to do with solitary confinement, just general conditions of confinement. What I'm suggesting is I'm a little skeptical about your argument that Jackson wasn't specific enough here. Okay, Your Honor, yes. So, I don't know that particular case, if it was a due process claim for an atypical. It was an Eighth Amendment. It was Eighth Amendment. For this atypical and significant hardship, this court made clear and mild that just vague assertions about conditions aren't enough for a reasonable jury to determine that the inmate suffered from an atypical and significant hardship. Here, there are general statements about segregation generally, but nothing about his particular cell, and nothing about what happened to him. Since it's summary judgment, why shouldn't we just assume that when he's talking about solitary confinement generally, he's talking about his own case? It's summary judgment. He still had the opportunity to provide evidence to support his claim. He's gotta come forward with more than just a conclusive reallocation. Could I ask you about the video here and the reversal on the taking away of good time credit? Sure. The petitioner, or the plaintiff here, tells us that the defendants denied the existence of the video in question until the day before the close of discovery, and did not make it available at the time of the hearing. Yes, Your Honor. Can you account for that? I cannot account for that, Your Honor. I would say that- Does it help account for the reversal on the taking away of good time? Because that would be a pretty sure loser on habeas. Your Honor, that issue is not here today. This is particularly the due process claim that doesn't have to do with the- Well, it has to do, if you're gonna take away the guy's good time credits, then Wolf v. McDonnell applies, right? Well, under this court's recent decision in Adams v. Riegel, where the good time credits is restored, then the amount of due process- That's my point. But you don't know that as you're going into the hearing. Correct, Your Honor. In this case, there's nothing in the record to suggest that that was known going into the hearing. May I add? Oh, I'm sorry. Well, go ahead. Your Honor, to that point, in Adams v. Riegel, it was restored, I believe, after the original hearing in which the video was, the inmate was denied access to the video. I agree that's a remedy for a clear due process violation to take away the loss of liberty that would have required due process. Could you help us deal with the apparent change of theories on qualified immunity? That was something raised in the reply brief. Absolutely, Your Honor. This isn't a change of theory, so to speak. We've argued below in our opening brief at summary judgment stage that the defendants had not violated any clearly established rights of Jackson's, and that would include, and that the conduct at the hearing was not a violation of any rights. Under Jackson's theory, that conduct would include placing him in segregation for three months. So, while we didn't specifically say placement in segregation in the qualified immunity argument, this is merely an amplification of that same argument that there is no clearly established right that has been violated by the defendants. So, as I indicated to your colleague, we've been struggling with these issues for many years, and the standard, at least under Seventh Circuit case law, is uncertain enough that qualified immunity is usually gonna be available, that at least when you're measuring in months, probably, a solitary confinement assignment, that doesn't trigger due process rights under Wolf unless conditions are bad enough, and that's just hard to tell when they're bad enough. Question I'd like to hear your thoughts on is, should we try to adopt some brighter line standards for when solitary confinement assignments will trigger due process requirements under Wolf? Your Honor, I would say, first of all, under Adams v. Riegel, the recent Seventh Circuit case, the standard for deprivation of due process or the amount of analyzing if there was due process below is not Wolf, it's the informal non-adversarial due process of Hewitt and that line of cases. I would also argue, Your Honor, that for qualified immunity, the Hardaway case, which we cite in our brief, specifically said that there isn't a clear line and acknowledged the very issue that you talked about, that simply this court has not announced, nor the Supreme Court announced a clear line. And there found, though, that there was qualified immunity and affirmed a summary judgment of qualified immunity in that case, and that was with six months of segregation. So here, the defendants are entitled to qualified immunity based on that case. Should we articulate some brighter lines so that there's actually some room for accountability here? I think the court can do that and it would be welcomed to draw brighter lines. The Supreme Court has not chosen to do it, and specifically in the Wilkinson case mentioned that it wasn't going to draw a bright line, in that it even cited the Wagner case from this circuit that had asked the court to take that task on. But the court- So should we try it ourselves? The court should do what it thinks it needs to do to make, to help the next case. If I were on a prison disciplinary committee, I'd kind of like some guidance on this, if I'm going to get sued as an individual defendant. Sure, Your Honor, and understand that. This particular case, though, falls well within the case law of the court that there is no due process issue here and no liberty interest that has been implicated. So I'm not sure- I'd like, before you, oh, go ahead, to finish your thought. No, Your Honor, I was finished. Just tell me this. Do you think that the conditions that were alleged by Mr. Jackson for the three-month duration, would they be sufficient to trigger a liberty interest if, for example, he had alleged that the noise conditions were so onerous as to prevent nearly all sleep, or that the mice infestation was so significant as to cause injuries or otherwise threaten his health? Would we have had a different case here? Your Honor, I see I'm out of time. You cannot escape the question. Fair, Your Honor. So a couple thoughts on that. No, Your Honor, because first of all, those obviously are not the facts here, that the declaration here is bare bones and doesn't provide that kind of testimony. Second of all, these really are not the type of conditions, and I think the district court was getting to this in its opinion, but that these are not really the type of conditions that give rise, typically, to a due process claim. And that's because they're not inherent to the segregation, the sentence for three months of disciplinary segregation. It's not inherent to that sentence. It's not like the solitary confinement where there's no communication with humans that is typically an issue in these cases. So this would really have been better couched as perhaps an Eighth Amendment claim, if anything. But in terms of due process, I don't think it would make a difference because there's still no evidence that the officials here, or the defendants here, knew of these conditions when they sentenced Jackson to three months in segregation. And they certainly, certainly it's not clear from anything in the record that that was the case. So to answer your question, Your Honor, no, I don't think that set of facts would change things here. All right, if anyone has anything else, no. Okay, well then. Thank you, Your Honor, we would ask that the court affirm the grant of summary judgment. Thank you, Your Honor. Thank you, Mr. Raskin. And Ms. VanHook, you asked for two minutes and you're going to get your two minutes. Thank you, Your Honor. Starting off, I just want to address Judge Hamilton's question regarding the bright line. If this court should implement one, we say absolutely not. This is the type of situation that this court recognizes extremely dangerous in Curvin versus Barnes. It ignores the fact that these are people, the deep psychological effects that segregation has on a person to say, oh, if you just do something under two months or under three months, ignores the fact that these are people whose due process rights have been violated and that even just three months, or pardon me, three days in conditions that are bad enough could just destroy a person mentally. So we absolutely oppose any bright line standard. We believe that that is what the court in Sandon was referring to, is that this has to be a weighing of conditions paired with duration. If that's so, plaintiffs in Mr. Jackson's situation will almost always lose on qualified immunity. Can you explain, Your Honor? Because a defendant prison official will be able to say, I don't know how this standard is gonna be applied by the courts to this situation in front of me. Bad conditions for a week. You want that to be potentially actionable. Yes, it must be. It might amount to a constitutional violation, but it's hard for me to see how we establish, clearly establish that a prison official should know that going in. Without drawing a bright line. Again, the prison official can claim qualified immunity if they are conducting themselves in a way of a clearly established right. We're not saying that you have a clearly established right to stay out of segregation. It's just that once there's been a due process violation, if you're placed into segregation that is deplorable enough conditions, or long enough, it could give you an actionable right because it's a deprivation of liberty interest. Again, I would like to really separate the qualified immunity attaching to the due process and whether or not that's actionable because of the liberty interest that you lost. And finally, I would just like to ask this court to reverse the district court's grant of summary judgment and to conclude that the deplorable conditions of the disciplinary segregation at Pontiac combined with Mr. Jackson's three month segregation were a deprivation of a liberty interest and to remand his due process claim for further proceedings. Thank you so much. Well, thank you so much. And thanks to both Ms. Van Hook and Mr. Rekkekeen. And the case will be taken under advisement. We're going to go on to case.